# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CHRISTOPHER YOUNGBLOOD,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 05-21 (RCL)** |
| ) | |
| **VISTRONIX, INC.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM OPINION

This matter comes before the Court on defendant's Motion [26] for Partial Summary Judgment. Having considered the motion, the plaintiff's opposition, and the defendant's reply, the Court will grant the defendant summary judgment with regard to plaintiff's breach-of-contract claim, and partial summary judgment with regard to plaintiff's Fair Labor Standards Act claim. The court will also grant the defendant summary judgment with regard to plaintiff's slander claim. A separate order will follow this opinion.

## BACKGROUND

Defendant, Vistronix, Inc., employed plaintiff, Christopher Youngblood, in the course of fulfilling a contract with the Federal Communications Commission ("FCC"). Vistronix terminated Youngblood on February 26, 2004, after he was implicated in the removal of data from a computer belonging to the FCC.

Wytonia Abernathy, a former Vistronix employee who also worked on the FCC contract, previously used the computer in question and requested that Youngblood copy her personal data from the machine so that she could take it with her. On January 6, 2004, after Abernathy left the

1

building for the final time, Youngblood – along with coworkers Lauren Santiago and Luis Nino – accessed Abernathy's computer and copied two folders containing Abernathy's personal materials.  Youngblood alleges that the only activity he performed was the copying of this data, but several weeks later, the computer was found to have been re-imaged,[1] its prior contents destroyed.  The FCC began an investigation to determine who may have so tampered with Abernathy's machine, but Vistronix alleges that the circumstantial evidence they were given by the FCC was enough to implicate Youngblood to an extent warranting his termination.

Youngblood's complaint advances these claims.  Youngblood alleges that because he was not an at-will employee, Vistronix's termination of his employment breached an express or implied contract.  (Compl. ¶ 58.)  Further, Youngblood claims that after terminating him, Barbara McNair, the Vistronix Project Manager for the FCC contract, held an "all-hands" meeting of Vistronix employees on the FCC contract.  At this meeting, Youngblood alleges that McNair slanderously claimed that "all evidence" in the destruction of the data on the Abernathy computer pointed to Youngblood.  (*Id*. ¶ 43.)  Lastly, Youngblood alleges that during his time at Vistronix, he was periodically denied overtime pay in violation of the Fair Labor Standards Act ("FLSA"), specifically 29 U.S.C.A. § 207 (West 1998 & Supp. 2006), the D.C. Payment and Collection of Wages Law, D.C. CODE ANN. §§ 32-1301-10 (LEXIS through D.C. Act 16-341), and the D.C. Minimum Wage Act, D.C. CODE ANN. §§ 32-1001-15 (LEXIS through D.C. Act 16-341).

Vistronix seeks partial summary judgment on the FLSA claims, contending that they are

---

[1] Re-imaging is a process through which the hard drive of one machine is made to look exactly like that of another. Typically this is done to make an entire group of computers contain exactly the same software running with exactly the same settings.  In work environments, the process is often used to clear the slate of employees' computers when the computers are given to other employees or put to new uses.

largely time-barred.  Further, Vistronix requests summary judgment with respect to the breach-of-contract and slander claims.  The Court examines each claim in light of the legal standard for summary judgment.

**DISCUSSION**

## I.  Legal Standard for Summary Judgment

Summary judgment is granted to a moving party when a question brought before a court by an opposing party can have but one reasonable answer – typically not the answer sought by the opposing party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986) (declaring equal the standard for summary judgment under Rule 56 and directed verdict under Rule 50); *see also* FED. R. CIV. P. 50(a).  A court must reach this conclusion without making credibility determinations or weighing evidence, and must give the opposing party the benefit of all reasonable inferences.  *Anderson*, 477 U.S. at 255.

To obtain summary judgment on a claim, the moving party need only show that there is no genuine issue of material fact as to that claim.  The movant need not entirely foreclose the possibility that there could exist an issue of material fact, he need only claim that the non-movant has failed, or by necessity will fail, to appropriately raise the issue.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

The non-movant must show, without resting on only its earlier pleadings, that the claim under attack raises a genuine issue of material fact.  Failure to do so will result in summary judgment in favor of the movant.  FED. R. CIV. P. 56(e).  To contest summary judgment successfully, the issues raised in response to the motion must be material:  opponents will not

succeed by raising only trifling questions or questions irrelevant to the outcome of the dispute. *See Anderson*, 477 U.S. at 248-50.

Having outlined the burdens placed on a movant for summary judgment and on his opponent, the Court now applies the foregoing standard to the case at bar, beginning with Youngblood's breach-of-contract claim.

## II.  Breach of Contract

As Vistronix acerbically notes in its reply brief, Youngblood has submitted a large volume of material to supplement his opposition to Vistronix's summary judgment motion. (Def.'s Reply 1.)  While useful in buoying some of the plaintiff's claims, nowhere in the epic mound of paper can the Court find a good reason to deny Vistronix summary judgment as to the breach of contract issue.  The Court will grant Vistronix summary judgment on that claim for the reasons outlined below.

### A.  Youngblood's Intent to be Employed At-Will

Youngblood contends that provisions in Vistronix's employee handbook imply that he is something other than an at-will employee.  There are several reasons to believe Youngblood had no such implied contract, but the Court begins with the simplest:  it could not possibly be any clearer that neither party intended to form such a contract.  Youngblood signed a "Pre-Employment Release" affirming that he understood any offer of employment at Vistronix to be at-will. (Youngblood Dep. Ex. 2, Oct. 27, 2005.)  Further, Youngblood testified that he understood, at the time of his employment, that he was an at-will employee.  (Youngblood Dep. 35:4-7.)  The Court will take for granted that Vistronix intended Youngblood's employment to

be at-will:  all the forms Youngblood signed indicating that he understood his at-will status were Vistronix's forms.

It is axiomatic that contracts should be construed to embody the parties' intent – clearly so when, as in the instant case, neither party disputes that intent.[2]  Plaintiff does not deny that he intended to be employed at-will when he accepted his job, and as such, the Court sees no reason to construe Youngblood's employment as anything else.

### B. The Employee Handbook's Disclaimer

The plaintiff alleges that his employee handbook implies something beyond at-will employment, yet that handbook is careful to ensure that no such inference be drawn from its pages.  Youngblood cites the section on employee discipline as implying a contract by which he may not be terminated, save through the steps outlined therein.  Yet, as the defendant notes, that section of the handbook also states that:  "These guidelines do not constitute a contract or promise.  Any individual employee can be terminated, at any time, with or without cause and without notice."  (Pl.'s Opp'n Ex. J at 7.)  Further, the handbook contains a receipt, which Youngblood signed, that again affirms his status as an at-will employee and disclaims any implied contract that might suggest otherwise.  (Pl.'s Opp'n Ex. I.)

Plaintiff may have intended to argue that language in the handbook conflicted with the disclaimer in such a way as to create an ambiguity requiring trial to a jury.  (Pl's Opp'n 13.) Generally speaking, an employer may disclaim any implied contract an employee might deign to read into an employee handbook (subject to restrictions on unconscionability).  *Smith v. Union*

---

[2] RESTATEMENT (SECOND) OF CONTRACTS § 201 (1981); 11 RICHARD A. LORD, WILLISTON ON CONTRACTS § 30:2 (4th ed. 2006); *see, e.g., U.S. v. Stuart*, 489 U.S. 353, 368 (1989); *Samra v. Shaheen Bus. & Inv. Group, Inc.*, 355 F. Supp. 2d 483, 508 (D.D.C. 2005) (Lamberth, J.); *Jack Baker, Inc. v. Office Space Dev. Corp.*, 664 A.2d 1236, 1239 (D.C. 1995).

*Labor Life Ins.*, 620 A.2d 265, 269 (D.C. 1993) (citing *Goos v. Nat'l Ass'n of Realtors*, 715 F.

Supp. 2, 4 (D.D.C. 1989) (Hogan, C.J.).  The legal effect of such a disclaimer is a question of

law.  *Smith*, 620 A.2d at 269.  If the court finds the disclaimer is rationally at odds with some

aspect of the parties' bargain, the ambiguity as to the parties' intention raises a question of fact

for a jury.  *Strass v. Kaiser Found. Health Plan of Mid-Atl.*, 744 A.2d 1000, 1012-15 (D.C.

2000) (citing *Greene v. Howard Univ.*, 412 F.2d 1128, 1135 (D.C. Cir. 1969)).

      The Court finds no logical incongruity between Vistronix's disclaimer and the language

contained elsewhere in the handbook, or in the parties' bargain.  As noted above, it is abundantly

clear that both parties intended for Youngblood to be an employee-at-will.  Further, the

permissive language in the disciplinary portion of the handbook is instructive:  "employee *may*

be notified," "Vistronix *may* take disciplinary steps," "Vistronix *may* terminate the employee."

(Pl's Opp'n Ex. J at 7.)  In *Strass*, the D.C. Court of Appeals found a rational opposition between

the presence of a disclaimer and the use of the word "shall."  *Strass*, 744 A.2d at 1013.  If a party

"shall" do something, it makes little sense for the party to elsewhere say that it might not do it.

If a part "may" do something, however, it also may not do it.  Vistronix may disclaim an implied

contract as to disciplinary measures on the grounds that the language describing those measures

does not actually require that they be employed.

      Plaintiff also argues that Vistronix had an implied contract with Youngblood not to

violate the law based on representations in the employee handbook.  (Pl's Opp'n Ex. J at 13.)

Specifically, plaintiff looks to the remark:  "As a government contractor, Vistronix is required to

comply with rigorous Federal government regulations with respect to recording and reporting

time worked."  (*Id.*)  The Court will dispose of this assertion in two ways.

First and most simply, the Court notes that Vistronix has a pre-existing duty to abide by federal government regulations, whether it says so in its employee handbook or not.  It is a general maxim of contract law that a party cannot offer as consideration a duty that the party is already obliged to perform.  RESTATEMENT (SECOND) OF CONTRACTS § 73 (1981); 3 RICHARD A. LORD, WILLISTON ON CONTRACTS § 7:41 (4th ed. 2006); *see, e.g., U.S. v. Bridgeman*, 523 F.2d 1099, 1110 (D.C. Cir. 1975) (noting rioting prisoners who had a pre-existing duty not to harm guards could not offer as consideration an agreement to forego violence against a guard).

Secondly, the Court believes that the damages to which Youngblood would be entitled, should he prevail on his FLSA claim, would constitute a double recovery should he be permitted to also collect damages for breach of contract.  If Vistronix is found to have violated the FLSA, *a fortiori* it will also have breached an implied contract not to violate the law.  The same failure to pay overtime grounds both claims, but the damages to which plaintiff would be entitled under the FLSA (lost overtime plus liquidated damages and attorney's fees), 29 U.S.C.A. § 216(b) (West 1998 & Supp. 2006), *should* be greater.[3]  Courts have an obligation to prevent double recovery by an individual, *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 333 (1980); however, as the pre-existing duty to uphold the law is dispositive of this issue, the Court will not proceed any further on this point.  The Court also here ends its discussion of the issue of contracts implied by the employee handbook.

## C.  Public Policy Exception to Termination of At-Will Employment

---

[3] Plaintiff asks $120,000 in damages for breach of contract.  This seems to be bottomed on the assertion that Youngblood would have continued his employment with Vistronix through the end of its contract with the FCC. (Compl. ¶ 55.)  However, because Youngblood was terminable at-will, the Court believes any damages premised on the longevity of his employment are speculative.

As the defendant noted in its reply brief, this Court will not allow plaintiffs' opposition briefs to be vehicles for after-the-bell amendment of complaints. *Cronin v. FAA*, 73 F.3d 1126, 1134 (D.C. Cir. 1996). Therefore, the Court will cease its discussion of Youngblood's breach-of-contract claim, and for the reasons outlined above, the Court will grant Vistronix's motion for summary judgment as to that issue.

## III.  Failure to Pay Overtime

Plaintiff fares better with the allegation that Vistronix failed to pay him overtime in violation of the Fair Labor Standards Act, the D.C. Payment and Collection of Wages Law, and the D.C. Minimum Wage Act. Youngblood asserts that from July 2001, until February 2004, he did not receive overtime pay for hours worked. He claims to have kept track of the hours, for at least a portion of this time, on a calendar in his desk, having been instructed by his supervisor to "bank" the hours and use them to take paid leave on other occasions (i.e., as "comp time").

Defendant requests partial summary judgment as to the claims for failure to pay overtime, asserting that part of the time in question is beyond the statute of limitations (only as applies to the FLSA claim). Further, Vistronix contends that Youngblood was an overtime-exempt employee during another portion of time in question. Vistronix wishes to limit any recovery under the FLSA claim to the period between January 7, 2003 and March 1, 2003. The Court believes that there is a genuine issue of material fact, at this stage in the proceedings, as to the appropriate statute of limitations under the FLSA. The Court does not, however, find any such material issue with regard to Youngblood's exempt status. Accordingly, the Court will deny summary judgment to Vistronix as to the period between January 7, 2002 and January 7,

2003, and grant summary judgment to Vistronix as to the period between between March 1, 2003 and Youngblood's termination.[4]

### A.   "Willfulness" and Extension of the FLSA's Statute of Limitations

Plaintiff argues that Vistronix's failure to pay him overtime was "willful," under 29 U.S.C.A. § 255(a) (West 1998).  The FLSA's statute of limitations is extended to three years from the cause of action when the employer's violation of the FLSA is willful.  *Id.*  Vistronix contends that its behavior was not willful, and that the statute of limitations is therefore only two years.  *Id.*

An employer willfully violates the FLSA when the employer either knows or shows reckless disregard as whether its conduct is prohibited by that Act.  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  Vistronix refers the Court to *Phuong v. Nat'l Acad. of Scis.*, 901 F. Supp. 12 (D.D.C. 1995) (Friedman, J.), in asking the Court to find a lack of willfulness. The Court believes the determination of willfulness to be very fact-specific, and consequently does not believe that *Phuong* ought to direct the outcome here.

In *Phuong*, the National Academy of Sciences was found not to have acted willfully in denying Phuong overtime.  Phuong was aware of the defendant's overtime policies, never submitted timesheets for the overtime hours for which she then sought payment, was paid for all hours that she did record, and was later offered an opportunity to receive payment for the hours she failed to record.  Vistronix asks the Court to rule against Youngblood on this issue because of the similarities between his case and *Phuong* – the notice of company overtime policy (*see* Youngblood Dep. Ex. 12), the failure to record the overtime hours on timesheets, and the

---

[4] Since defendant does not raise the statute of limitations as barring Youngblood's District of Columbia law claims, they will not be addressed further in this Memorandum Opinion.

payment for all hours that Youngblood did record (Youngblood Dep. 83:3-10).  The Court must decline.

Phuong alleged that she was told she was not permitted to take overtime; however, her supervisor said that he would have paid her for the overtime she *did* take, and she was later offered a chance to claim those hours.  The FLSA gives no limitation of the number of hours an employee may work in any week:  "he may work as many hours a week as he *and his employer* see fit, so long as the required overtime compensation is paid him." 29 C.F.R. § 778.102 (2005) (emphasis added).  It follows that it is possible for an employer *not* to see fit to have an employee work overtime hours, and consequently, as in *Phuong*, instruct the employee not to do so.  Instructing an employee not to work overtime is quite different from instructing him not to record his overtime hours, and consequently not be paid for them.  Vistronix does not deny that its supervisors did this, but claims, essentially, that its employees should have known better than to listen to their supervisors.  (*See* Def.'s Mot. 5-6; Def.'s Reply 5-6.)

Vistronix further claims that because "there is no evidence . . . that these supervisors intended to violate the FLSA," the supervisors could not have willfully violated it.  This conclusion seems to require a specific intent to violate the Act.  The Court does not believe that an individual can recklessly disregard the FLSA only if she was instructed of the exact letter of the statute and his obligation to comply with it.  Vistronix's supervisors seem likely to have known that Vistronix was required to pay overtime for overtime hours worked.  (*See, e.g.,* Pl.'s Ex. F, ¶ 7.)  The supervisors told the employees not to record hours for which the employees would be entitled to overtime.  This prevented those employees from receiving, per the FLSA, "compensation for [their] employment in excess of [40 hours per workweek] at a rate not less

10

than one and one-half times the regular rate at which [they are] employed." 29 U.S.C.A. § 207. That those supervisors knew that it was specifically the FLSA requiring the payment of overtime is immaterial – what matters is their knowledge that they had *some* legal obligation to pay overtime.

The Court is careful to note that it is *not* employing the discredited *Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139, 1142 (5th Cir. 1972) standard, which would find the employer willful merely for being aware that the FLSA *might* apply. *See McLaughlin*, at 486 U.S. 133-34. Rather, the Court proclaims that when an employer does not pay its employees overtime, knowing that it ought to, the Court will not grant summary judgment to the employer simply because the errant supervisors did not know the exact law they were contravening.

Moreover, the Court is not convinced that Youngblood's failure to report his supervisor's request to deviate from payroll procedures goes to the issue of whether Vistronix intended for Youngblood to violate those procedures. Vistronix's intent is the relevant question. It is hardly beyond the pale to imagine employers violating their own written instructions – even having a de facto policy of doing so – through subsequent oral commands. A reasonable jury could certainly find that this occurred at Vistronix vis-à-vis Youngblood, and as such, the Court reiterates its refusal to grant summary judgment on this issue. Vistronix's willfulness in violating the FLSA, and subsequently, the applicable statute of limitations for Youngblood's claims, will remain a question of fact for the jury.

**B.  Youngblood's FLSA Exemption**

The Court is perplexed by plaintiff's argument that his categorization as an FLSA exempt employee is "unlawful." The relevant provision in the Code of Federal Regulations allows the

exemption of employees involved with:  "The application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software, or system functional specifications."  29 C.F.R. § 541.303(b)(1) (2002).[5]  Youngblood participated in this sort of activity at Vistronix during the period in question; further, Youngblood admits that in performing substantially the same job at a subsequent place of employment, he was also classified as exempt.  (Youngblood Dep. 125:14-126:14.)  Would Youngblood's counsel contend that his classification as exempt by subsequent employers is also illegal?  This strains credulity.

Plaintiff further makes the conclusory statement, unsupported by the record, that his status did not change until February 17, 2004.  (Pl.'s Mem. P. & A. 9.)  This statement attempts to contravene Vistronix's claim that it made an administrative error in failing to exempt Youngblood when it promoted him nearly a year earlier.  With no evidence to support that assertion, plaintiff merely wastes paper.  Plaintiff would be required to produce Rule 56(e)-competent affidavits that it was not administrative error that led to the delay in his status change, but some malevolence on the part of Vistronix.  The plaintiff has not done so.  Accordingly, the Court grants Vistronix summary judgment as regards Youngblood's exemption, foreclosing Youngblood's recovery under the FLSA for the dates between March 1, 2003 and his termination on February 26, 2004.

## IV.  Slander

Finally, Youngblood claims that by telling his coworkers that all evidence of skullduggery in the Abernathy affair points to him, Vistronix committed slander.  Vistronix contends that based on information orally communicated by the FCC, all evidence *did* point to

---

[5] This version of the regulation was in force during Youngblood's tenure as an exempt employee.

Youngblood as the tamperer.  Vistronix contends that FCC employees orally conveyed the

finding that all signs pointed to Youngblood as the person who undertook the deletion process on

the night of January 6-7.  As Youngblood does not provide a refutation of this contention

sufficient to meet the requirements for summary judgment (e.g., a sworn statement from an FCC

employee contending nothing was communicated to Vistronix), there is no genuine issue of

material fact as to whether Vistronix was told that all evidence pointed to Youngblood.  Since

Youngblood bears the burden of proving that he was defamed, and because there is no genuine

issue of material fact as to the truth of the allegedly defamatory statement, the Court will grant

summary judgment for Vistronix on Youngblood's defamation claim.  *See Lohrenz v. Donnelly*,

223 F. Supp. 2d 25, 59 (D.D.C. 2002) (Lamberth, J.) (noting that the truth of a statement is an

absolute defense to a charge of defamation).

### A.  The Truth of McNair's Statement Precludes a Slander Charge

To make a case for defamation, a plaintiff must satisfy four criteria.  First, the defendant

must have made a false and defamatory statement concerning the plaintiff.  Second, the

defendant must have published the statement, without privilege, to a third party.  Third, the

defendant must have been at least negligent in publishing the statement.  Fourth, the statement

must have either caused the plaintiff special harm, or constitute defamation per se.  *Lohrenz,* 223

F. Supp. 2d at 39 (citing *Klayman v. Segal*, 783 A.2d 607, 612 n.4 (D.C. 2001)).

Youngblood alleges that McNair (the project manager for the FCC contract) made a false

and defamatory statement when she claimed that all evidence regarding the deletion of data from

Abernathy's computer pointed to Youngblood.  In the District of Columbia, a defamatory

statement is one that "tends to injure the plaintiff in his trade, profession, or community standing,

or lower him in the estimation of the community." *Lohrenz*, 223 F. Supp. 2d at 39 (citing *Smith v. District of Columbia*, 399 A.2d 213, 220 (D.C. 1979)).  Given the nature of Youngblood's employment, breaching a computer security policy is certainly an injurious accusation.

However, as plaintiff in these proceedings, the burden falls on Youngblood to prove the elements of his claim.  Vistronix contends that it received an oral communication that implicated Youngblood, and McNair said, based on that information, that the evidence pointed to Youngblood.  In order to prevail against Vistronix on this motion, Youngblood would need to provide evidence showing that no such communication was made.  Youngblood has only shown that materials – of which the defendant was unaware – raise doubts about the strength of the damning evidence.  Had plaintiff deposed an employee of the FCC with knowledge of the oral communication made to Vistronix, perhaps he would have the evidence required to challenge Vistronix's motion.  Absent evidence to challenge the defendant's claim that defendant was told by the FCC that all evidence in the computer matter pointed to Youngblood, the Court must grant summary judgment to the defendant.

## CONCLUSION

For the foregoing reasons, the Court will grant partial summary judgment to Vistronix as to the date range for which it is liable under the FLSA.  The Court will also grant Vistronix summary judgment as to Youngblood's breach of contract claim.  The Court further grants Vistronix summary judgment as to Youngblood's slander and slander per se claims.

A separate Order will issue this date.

Signed by Royce C. Lamberth, United States District Judge, on July 27, 2006.